UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------x 08-CV-0066
                                       (RJA)(LGF)

ANGELA CLAYSON,

                    Plaintiff

                                       AFFIRMATION IN REPLY
                                       TO PLAINTIFF'S
                                       OPPOSITION TO
                                       DEFENDANT'S MOTION
                                       FOR SUMMARY JUDGMENT

          -against-

RUBIN & ROTHMAN, LLC,

               Defendant

-------------------------------------x

     ROBERT L. ARLEO, an attorney duly admitted to practice law
in the State of New York, hereby affirms the underlying to be
true under the penalties of perjury:

     1. I am counsel for Rubin & Rothman, LLC, Defendant named in
the above-entitled action.

     2. I submit the herein affirmation in reply to Plaintiff's
opposition to Defendant's motion for summary judgment.

     3. This affirmation addresses the woefully inadequate and,
frankly, unbelievable assertions set forth by the Plaintiff, her
counsel, Kenneth Hiller, and her mother, Lois Fancher, in
conjunction with the Plaintiff's opposition to Defendant's motion

                              1

for summary judgment. Therein the Plaintiff and her counsel
attempt to have this court believe that a) the Plaintiff retained
attorney Hiller for the express purpose of procuring Social
Security benefits for her; b) that she was counting on her Social
Security benefits to turn her life around; c) that she was
greatly overwhelmed and distressed when she was allegedly
threatened by a debt collector employed by the Defendant that the
Defendant would be able to deprive the Plaintiff of her
anticipated Social Security benefits and; d) that despite having
retained attorney Hiller for the express purpose of procuring
Social Security benefits, and hinging her entire future on these
expected benefits, she did not immediately seek his legal advice
to inquire whether the Defendant could seize her Social Security
benefits. This premise is simply not credible, especially in
light of the fact that the Plaintiff allegedly ultimately
consulted attorney Hiller, who, according to the Plaintiff and
her mother, immediately allayed any fears concerning her Social
Security benefits which she may have had.

    4. At a minimum, Plaintiff failed to mitigate her alleged
damages regarding the allegation that the Defendant threatened to
seize her expected Social Security benefits. Indeed, the
Plaintiff relies upon FDCPA caselaw regarding actual damages
which measures such damages upon the length of the distress
caused by the alleged violative conduct. However, based upon the
statements of the Plaintiff and her attorney, Mr. Hiller,
Plaintiff should be awarded no actual damages based upon the

alleged threat to seize her Social Security benefits(which threat Defendant continues to adamantly deny).

5. Based upon her affidavit filed in opposition to Defendant's motion for summary judgment, and her testimony, the Plaintiff allegedly waited six months to consult with her attorney and ask him a simple question regarding her Social Security benefits. Indeed, in paragraph "16" of her affidavit, the Plaintiff, referring to her anticipated Social Security benefits, states "I pinned all of my hopes on that claim. The Defendant's threats to my Social Security undermined those hopes and caused me to be extremely upset". In paragraph "18" of her affidavit, the Plaintiff states "I found myself increasingly anxious over my financial future after the Defendant's threats were made. I spent an inordinate amount of time dwelling on what would happen if the Defendant made good on their threats. I thought about these concerns every single day until Mr. Hiller set my mind at ease. I lost sleep, became irritable, experienced an increasing amount of down moods." Therefore, by her very admission, had the Plaintiff promptly contacted her attorney, whom she retained expressly concerning Social Security benefits, an attorney who has filed hundreds of FDCPA cases, her mind would have been "put at ease" via advisement from her attorney that her anticipated Social Security benefits are exempt from creditors.

6. Nor does Plaintiff's mother's affidavit provide any logical or believable assertions regarding the claim by the

3

Plaintiff that Defendant's collector threatened to seize her
Social Security benefits. In her affidavit, the Plaintiff's
mother goes through great detail explaining how Plaintiff, on
multiple occasions, informed her that the Defendant had
threatened to take her Social Security benefits, how Plaintiff
"quivered" when she advised her of these calls, how Plaintiff
appeared distraught and on the verge of tears and how the
Plaintiff "pinned her hopes" on her future Social Security
benefits. Plaintiff's mother further testified that the Plaintiff
"finally figured out" that she might be able to "escape the
clutches of the Defendant" by putting her Social Security funds
in her mother's bank account. Plaintiff's mother then further
alleges that they were "never quite sure" that this would work as
they thought the Defendant could undue her transfer of funds to
her. Plaintiff's mother further testified that they discussed
these Social Security threats approximately twice per week.
Despite all of these assertions, it is simply unbelievable that
the Plaintiff's mother would not have immediately advised the
Plaintiff to speak to Mr. Hiller, her Social Security attorney,
regarding the alleged threats by the Defendant's debt collector.
Indeed, Plaintiff's mother also admits that Plaintiff's fears
dissolved after she consulted with her attorney, Mr. Hiller.

   7. Even if the Defendant had wrongly threatened to seize the
Plaintiff's Social Security benefits, the "avoidable
consequences" doctrine would preclude the Plaintiff from alleging
any emotional distress as a result thereof. A tort defendant is

4

not liable for consequences preventable by actions that reason requires a plaintiff to take to mitigate damages. See <u>Ellerman Lines, Limited v. The President Harding</u>, 288 F.2d 288 (2d Cir. 1961).

8. Nor is Plaintiff's claimed distress from the alleged forwarding of her medical records by her mother support any award of actual damages. In paragraph "6" of her affidavit, Plaintiff's mother states that she advised the Defendant that the Plaintiff was on Workers Compensation, was totally disabled, and could not afford to pay the debt. Plaintiff's mother, in paragraph "7" of her affidavit, states that "Defendant replied that they would require medical evidence to document Plaintiff's disability". Shortly thereafter, Plaintiff's mother states that she faxed ten pages of Plaintiff's medical records to the Defendant and further states (in regard thereto) "I have to confess, I did not consult with Angela prior to doing so". Indeed, there was absolutely nothing improper in regard to requesting medical evidence in regard to documenting Plaintiff's disability. As evidenced by Plaintiff's mother's affidavit, there was no request or demand by the Defendant for Plaintiff's mother to surreptitiously forward Plaintiff's medical records without the knowledge or consent of the Plaintiff. The Plaintiff's mother's "I have to confess.." statement confirms that, if anyone is at fault, it is Plaintiff's mother and not any person associated with the Defendant.

9. Plaintiff's mother's affidavit demonstrates that her mother is simply not credible. Although admitting in paragraph "6" of her affidavit that she advised the Defendant that Plaintiff was "..... on Workers Compensation, was totally disabled, and could not afford to pay the debt", she previously states in paragraph "4" of her affidavit that she was "...very disappointed in Angela by virtue of the fact that she had apparently not lived up to a payment arrangement she had agreed to.." continuing by stating (in regard thereto) "In discussions with Angela about this, I made my disappointment in her abundantly clear.". It is hard to fathom how a mother could be extremely disappointed in her daughter's failure to abide by a payment agreement when such mother knew that her daughter's sole source of income was de minis, that her daughter was "totally disabled" and that such mother was providing financial support to her daughter who was compelled to move in with her.

10. Nor can the Plaintiff support a claim for actual damages based upon the alleged disclosure of the debt to her family members. Indeed, the affidavits submitted by the Plaintiff and her mother confirm the Defendant's contention that Plaintiff's mother requested information regarding the Plaintiff's Ford debt as the Plaintiff's mother was providing financial support to the Plaintiff due to her total disability. Indeed, in paragraph "15" of her affidavit, the Plaintiff refers to her parents' "...generous financial support of me...". Plaintiff's mother, in paragraph "8" of her affidavit, confirms that she offered to

6

satisfy the Plaintiff's Ford debt for $4,000.00. Furthermore, in paragraph "2" of her affidavit, Plaintiff's mother states that the Defendant advised her of the debt and the amount owed but does not deny that she asked for particulars concerning the debt.

11. Based upon the affidavits submitted by the Plaintiff and her mother, the worst scenario which Plaintiff can factually and legally establish would be brief embarrassment and family discord. As referenced by the Defendant in it's memorandum of law in support of it's motion for summary judgment, the matter of Fontana v. C. Barry & Associates, LLC, 2007 WL 2580490 (W.D.N.Y.), held that this alleged brief embarrassment and family discord do not entitled a Plaintiff in an FDCPA matter to an award of actual damages.

12. Had the Plaintiff promptly contacted Mr. Hiller, her damages would have been less than the damages suffered in the matter of Miller v. Midpoint Resolution Group, 2009 WL 959546 (W.D.N.Y.). Therein, the Plaintiff met with Mr. Hiller four days after receiving the alleged threat by the subject debt collector. Said case proves that, had the Plaintiff herein met with Mr. Hiller, as would a reasonable client under the alleged circumstances, there would have been, at most, a short period of emotional distress. Indeed, the Second Circuit has recognized the importance of attorney representation stating:

> "when an attorney is interposed as an
> intermediary between a debt collector

7

and a consumer, we assume the attorney,

rather than the FDCPA, will protect the

consumer from a debt collector's

fraudulent or harassing behavior".

See Kropelnicki v. Segal, 290 F.3d 118 (2d Cir. 2002)

13. In her Memorandum of Law in Opposition to Plaintiff's
Motion For Summary Judgment, Plaintiff cites to numerous FDCPA
cases wherein actual damages were awarded based upon emotional
distress caused by a debt collector. However, Plaintiff still
cannot overcome the fact that she was under severe emotional
distress due to her electrocution. Indeed, the Plaintiff cannot
possibly demonstrated that the alleged acts of the Defendant
herein was the proximate cause of her emotional distress. See
Donahue v. NFS, Inc., 575 F. Supp. 2d 776, 789 (S.D. Miss.
2008)(granting summary judgment to FDCPA defendant based upon
finding that no reasonable person could conclude that alleged
FDCPA were the proximate cause of the plaintiff's emotional
distress); Milton v. Rosicki & Rosicki Assoicates, P.C., 2007 WL
2262893 (E.D.N.Y.)(finding no reasonable nexus between stress and
alleged FDCPA violation where plaintiff previously wrote letters
attributing distress to living in a vermin-infested apartment).

14. Not only does Plaintiff confirm her general state of
distress in her deposition, Plaintiff's mother confirms same in
paragraph "10C" of her affidavit wherein she asserts:

8

> "That from the time of her accident in 2004,
> Angela experience(d) significant difficulties
> emotionally coping with the consequences of
> her injuries. She seem(ed), at times, hopeless
> and overwhelmed. She cried on a fairly regular
> basis. She strove to be independent, but was
> having a great deal of difficulty doing so.
> Thus, in no way would Angela or I ever suggest
> that the Defendant was completely to blame
> for Angela's emotion state, even primarily to
> blame.".

Based upon this statement, there is no way that Plaintiff can
establish that Defendant was the alleged proximate cause of her
distress.

15. In fact, the assertions set forth in Plaintiff's
affidavit confirm that the Plaintiff simply is not credible. The
totality of the Plaintiff's affidavit, her mother's affidavit and
Mr. Hiller's affirmation reek of an attempt to prove damages
where none actually occurred. Furthermore, Plaintiff is obviously
attempting to locate some entity to hold responsible for the
effects of her electrocution based upon the fact that she
testified at her deposition that she could not hold the owners of
the home where she was electrocuted legally liable.

16. In regard to the statements made by attorney Hiller in

9

his affirmation dated April 22, 2009. Importantly, any dispute
and/or disagreement between Mr. Hiller and I in regard to the
proper use of the FDCPA should not result in a game of "one-
upmanship" in regard to the herein action. The evidence now
before the Court confirms that the Defendant did not cause any
actual damages to the Plaintiff and that the very allegations
advanced by the Plaintiff should carry no weight before this
court based upon the ridiculous and simply unbelievable
assertions advanced by the Plaintiff and her mother. However, Mr.
Hiller has made serious allegations against me in his affirmation
which are simply wrong and untrue. Therefore, I am compelled to
address and clarify these unfound assertions.

     17. In paragraph "7" of his affirmation, Mr. Hiller alleges
that I have a "disdain" for the private attorney general function
of the FDCPA and that I brand the filing of a large number of
FDCPA lawsuits as "somehow improper". On the contrary, I have
filed hundreds of FDCPA lawsuits on behalf of consumers in state
and federal courts in many states, 24 of which have been
certified as class actions under Fed. R. Civ. P. 23. Furthermore,
I have negotiated pre-suit settlements in hundreds of additional
FDCPA matters. Therefore, I have no "disdain" for the private
attorney general of the FDCPA nor am I adverse to commencing
FDCPA lawsuits when my efforts to avert said lawsuits prove
fruitless. However, I do disdain acts of clear abuse of the FDCPA
by attorneys who refuse to accept the maximum statutory damages
and actual damages which greatly exceed the amount of actual

10

damages justified by the facts of a particular case.

18. In paragraph "8" of his affirmation, Mr. Hiller alleges
that I do not believe in taking steps to maximize the recovery I
obtain for my consumer clients. This assertion is simply false.
Notwithstanding, although I am ethically bound to allege all
claims which my clients may have a legal right to assert, I also
have an ethical obligation not to allege claims which have no
basis in fact or law.

19. Also in paragraph "8" of his affirmation, Mr. Hiller
alleges that he is able to obtain more than $1,000.00 for his
clients in over 90% of the cases he files. However, Mr. Hiller
fails to also state that no FDCPA case which he has filed has
resulted in a court-ordered award of actual damages in excess of
the $1,000.00 actual damages which was awarded to the Plaintiff
in the herein action. Therefore, when Mr. Hiller asserts that he
has obtained more than $1,000.00 for his clients in over 90% of
his cases, he is referring to settlements which he negotiated
with debt collectors after he filed his numerous FDCPA lawsuits
but without having to prove damages via motion or via trial.
Indeed, Mr. Hiller is well aware that he could never actually
perform trials or engage in motion practice for even 1/3 of the
cases he files based upon the handful of attorneys associated
with his firm. Furthermore, simply because a debt collector
invoked a cost-benefit analysis and settled with Mr. Hiller, such
action in no way establishes that his clients were entitled to

11

the amount of monies which they ultimately received.

20. In regard to those cases cited by Mr. Hiller in
paragraphs "5" of his affirmation, I stand by my criticism of Mr.
Hiller in regard to his litigation tactics. Said criticism is not
based upon any "....extravagant inference from vague
recollection..." but, rather, based upon my almost 20 years
representing consumers under the FDCPA. Indeed, said criticism is
further supported by Mr. Hiller's assertions in paragraph "9" of
his affirmation. Therein, he is able to cite to only two FDCPA
cases wherein he has not sought actual damages.

21. In sum, nothing in the Plaintiff's opposition papers
justifies an award of any actual damages whatsoever. Therefore,
summary judgment must be granted to the Defendant as the
Defendant's offer of judgment now moots the herein action.

DATED: Haines Falls, New York
       May 8, 2009

                                        _____
                                        ROBERT L. ARLEO

12

## CERTIFICATE OF SERVICE

The undersigned, being duly admitted to practice law in the State of New York and in the United States District Court for the Western District of New York, hereby affirms under the penalties of perjury that on the 8th day of May, 2009 a copy of the herein Affirmation In Reply To Plaintiff's Opposition TO Defendant's Motion For Summary Judgment was served upon the Plaintiff Angela Clayson via United States Post Office regular mail addressed to:

> Law Offices of Kenneth Hiller
> 6000 North Baily Avenue
> Ste. 1A
> Amherst, New York    14226

DATED: Haines Falls, New York
       May 8, 2009

ROBERT L. ARLEO