UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA CLAYSON,

                                    Plaintiff,

            v.                                              1:08-cv-0066-RJA-LGF

RUBIN & ROTHMAN, LLC,

                                    Defendant.
_____

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION

## I.  PROCEDURAL POSTURE OF THIS MOTION.

        This case involves claims by the Plaintiff that the Defendant violated multiple

provisions of the Fair Debt Collection Practices Act (FDCPA).  First, Plaintiff alleged

that the Defendant violated 15 U.S.C.§§1692c(b), 1692b(1), (2) and (3) by improperly

disclosing the Plaintiff's debt to Plaintiff's mother.  Second, Plaintiff alleged that the

Defendant violated 15 U.S.C.§§1692e(4) and e(5), as well as 1692f by improperly

threatening to seize Plaintiff's exempt Social Security funds.

        The case proceeded to a jury trial that was held from May 25, 2010 through

May 28, 2010.  During the course of the trial, and prior to the submission of the case to

the jury, Plaintiff's counsel objected to various tactics and statements made by counsel

for the Defendant.  The Court also made several objections sua sponte to some of the

questions and tactics of defense counsel.

        Prior to the submission of the case to the jury, Plaintiff's counsel moved for a

directed verdict pursuant to Rule 50(a)(2) of the Federal Rules of Civil Procedure. The

Court rejected that motion. (Exhibit C, pgs. 5:9-6:4).  Plaintiff's counsel also moved to

conform the pleadings to the proof pursuant to FRCP 15(b)(1).  The Court granted that motion. (Exhibit B, pgs. 99:17-100:7).

Thereafter, the matter was submitted to the jury.  A jury verdict finding that the Defendant had committed no violations of the Fair Debt Collection Practices Act was entered on May 28, 2010.  This Court subsequently entered a judgment dismissing this case on June 9, 2010.

On June 23, 2010, Plaintiff moved for multiple forms of relief from the verdict and judgment.  First, Plaintiff moved pursuant to FRCP 50(b)(3) for a judgment as a matter of law on Plaintiff's claim that the Defendant improperly disclosed her debt to Plaintiff's mother in violation of 15 U.S.C.§§1692c(b), 1692b(1), (2) and (3).  Second, in the event that this Court declines to find as a matter of law that Plaintiff is entitled to a judgment on this claim, Plaintiff requested a new trial pursuant to FRCP 59(a)(1)(A) based upon the improper statements and conduct of defense counsel during trial.  Third, Plaintiff requested a new trial on her claim that the Defendant violated 15 U.S.C.§§1692e(4) and e(5), as well as 1692f by improperly threatening to seize Plaintiff's exempt Social Security funds.  Again, the basis of this request is the improper statements and conduct of defense counsel during trial.

Plaintiff's initial Memorandum of Law was somewhat skeletal resulting from the fact that a transcript of the trial had not yet been provided.  Now with the benefit of the transcript, Plaintiff submits this Memorandum of Law.  For the purposes of this motion, it should supersede Plaintiff's initial Memorandum of Law in its' entirety.

**II.     PLAINTIFF IS ENTILED TO JUDGMENT AS A MATTER OF LAW ON HER CLAIMS THAT THE DEFENDANT IMPROPERLY DISCLOSED HER DEBT TO HER MOTHER.**

The standard for a directed verdict is the same as applies to a summary judgment. Thus, the Court should grant a directed verdict only when the undisputed facts which mandate that one party prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-51 (1986); *Piesco v. Koch*, 12 F.3d 332, 341 (2d Cir.1993).

There is no dispute that Angela Clayson was a consumer, that her debt was a consumer debt, that Rubin & Rothman was a debt collector, and that after Plaintiff's default on said debt Rubin & Rothman was hired to attempt to collect the debt.

The following additional undisputed facts establish as a matter of law that Defendant Rubin & Rothman violated the FDCPA:

**1.     Angela Clayson never consented to having her debt disclosed to her mother, Lois Fancher.owed a consumer debt to Ford Motor Credit.**

Angela Clayson testified that she never consented to the disclosure of her debt to her mother. (Exhibit A, pgs. 41:9-17).  Barry Mack acknowledged that no such consent was given as well. (Exhibit B, pgs. 30:2-13).

**2.     In January of 2007, Barry Mack called Plaintiff's mother and left a message on her telephone answering machine.**

Lois Fancher testified that she became aware that Plaintiff's automobile had been repossessed at the time of the repossession.  The next time she heard anything about the debt was when Rubin & Rothman called her for the first time in January of 2007.  Ms. Fancher testified that in that telephone call, Mr. Mack disclosed that he was calling about a debt owed by Angela Clayson. (Exhibit A, pgs. 116:3-117:14).

Barry Mack also testified that he called Ms. Fancher and left a message on her telephone answering machine. (Exhibit B, pgs. 77:12-14).

### 3. In the January 2007 telephone message that Barry Mack left on Lois Fancher's telephone answering machine, Mr. Mack disclosed that Plaintiff owed a debt.

Lois Fancher testified that Barry Mack disclosed in the January 2007 telephone message left on her telephone answering machine that Plaintiff owed a debt. (Exhibit A, 2010, pgs. 116:3-117:14).

Mr. Mack never testified directly about the nature of the message he left on Ms. Fancher's answering machine.  However, he testified that he always discloses that he is a debt collector attempting to collect a debt in each and every telephone message that he leaves on a persons telephone answering machine. (Exhibit B, pgs. 63:9-24).  At no point during the trial did Mr. Mack, or any other witness dispute Ms. Fancher's testimony that Mr. Mack had disclosed the debt in his January, 2007 telephone message to Ms. Fancher.

### 4. At the time the disclosure was made, Angela Clayson did not live with Lois Fancher.

Lois Fancher testified that Angela Clayson resided with her from the end of May, 2007 through July 5, 2007. (Exhibit A, pgs. 134:3-11).  She confirmed that Angela did not reside with her when the January 2007 telephone message was left when she explained that the day after the message was received, she drove to Angela's house to give her the message. (Exhibit A, pgs. 117:17-24).  Angela Clayson confirmed her mother's account. (Exhibit A, pgs. 32:16-33:8).  There is no testimony or other evidence contradicting the assertions of Ms. Fancher and Angela Clayson that Angela did not live with her mother at the time Mr. Mack left the message on Lois Fancher's telephone answering machine.

4

It is submitted that it is undisputed that the Defendant disclosed Plaintiff's debt to Lois Fancher in Mr. Mack's January, 2007 telephone call.  This is a clear violation of §1692c(b) in conjunction with §1692b(2). *Grzbowski v. I.C. System, Inc.*, --- F.Supp.2d ---, 2010 WL 774386*5 (M.D.Pa., March 5, 2010); *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y.2006).

The holding of this Court in *Mostiller v. Chase Asset Recovery Corp.*, 2010 WL 335023 (W.D.N.Y., January 22, 2010) does not provide a defense to the Defendant.  In *Mostiller*, Judge Arcara found that a *Foti* disclosure made on the <u>Plaintiff's home answering machine</u> did not violate §1692c(b) because:

> Here, plaintiff has made no allegation that defendant knew or could anticipate reasonably that her fiancé lived with her and would overhear the answering machine. Plaintiff further has not alleged that defendant left a message with any intent to embarrass her.

*Id.*, *3.

Unlike the situation in *Mostiller*, the Defendant in this case was not calling Plaintiff's residence.  The Defendant was, instead, calling the Plaintiff's mother's home telephone.  Clearly, the Defendant knew or could have reasonably anticipated that Plaintiff's mother would hear their disclosures regarding Plaintiff's debt.

The second prong of *Mostiller* relates to whether there was an intent to embarrass plaintiff.  Plaintiff submits that to the extent that *Mostiller* requires that a plaintiff prove the defendant *intended* to embarrass the Plaintiff, it is mistaken.  The FDCPA is a strict liability statute. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).  Thus, the statute does not require that a plaintiff prove a defendant intended to violate the statute.  In addition,  where it found it appropriate, Congress carved out specific exceptions to the strict liability standard, such as may be found at §1692d(5) (requiring harassing repeated

calls be done with *intent* to annoy, abuse or harass a person to be actionable).  §1692c(b) includes no similar requirement.

This Court appeared to agree with the above analysis given the jury charge it rendered.  With respect to telephone messages, this Court charged:

> Under this section of the statute, therefore, a debt collector generally may not communicate in connection with the collection of any debt with any other person other than the consumer.  This rule includes an answering machine message if a debt collector has reason to believe that a third party could overhear it and intentionally leaves it anyway.  The rule does not include inadvertent, unintentional disclosures to third parties.  In other words, ***it would be improper for a debt collector to leave a message about a consumer's debt on an answering machine that is not used exclusively by the consumer*** or where the debt collector believes that answering machine maybe used by someone other than the consumer.
>
> On the other hand, it would not be improper for the debt collector to leave such a message if it was believed that it was leaving the message on a machine that was only used by the consumer.

(Exhibit C, pgs. 24:14-25:5) (emphasis added).

Thus, the jury charge did not attempt to extend the *Mostiller* holding to messages left on a telephone answering machines other than the machine of the consumer.  Under the clear terms of the jury charge, the mere fact that a disclosure of the debt was left on the answering machine not exclusively used by the Plaintiff required the jury to find for the Plaintiff.

In summary, Plaintiff agrees with the jury charge that *Mostiller* should not be extended to cases, such as the instant case, where the third party disclosures were left on Plaintiff's mother's answering machine, not the Plaintiff's machine. In addition, it should be held that there is no requirement that one prove the Defendant intended to embarrass the consumer.  The fact that the disclosure was

recklessly made in a telephone message left on a telephone other than the debtor's

should be sufficient to establish a violation of 1692c(b).

### III.    A NEW TRIAL SHOULD BE ORDERED IN THIS CASE.

As is demonstrated below, during the course of the trial, and especially in his

closing statement, counsel for the Defendant made dozens of profoundly improper

statements to the jury that prejudiced Plaintiff's right to a fair trial.  Not only were there a

large number of improper statements, they were of different types.  They ranged from

disparaging remarks about Plaintiff and her attorney to improperly vouching for the

Defendant's character.

This was not an instance of an isolated remark imprudently made.  This was a

campaign of deceptive and improper statements made by defense counsel in a clear effort

to improperly disparage Plaintiff and counsel, to improperly infuse new "testimony" into

his closing statement, to improperly paint Plaintiff and her counsel as greedy, to

misrepresent the applicable law in the case, and to even suggest that defense counsel was

acknowledged as an expert by the Judge on the FDCPA.  It is submitted that this

campaign created a circus atmosphere, and eliminated any possibility of their being a fair

verdict.

Many of the improper statements made by Defense counsel were improper for

multiple of reasons.  Nonetheless, they can be generally categorized as follows.

Emphasis has been added to statements that counsel believes should be highlighted to the

Court.  Many of the statements are so palpably improper as to not need explanation.  In

other instances, the undersigned has commented on the reasons why the comments are

improper.

**A.   Defense Counsel Improperly Disparaged the Character of Plaintiff and Her Counsel.**

It is improper to make disparaging remarks toward opposing counsel and a party that are not supported by the record.  Defense counsel made many such comments during the course of the trial:

**1.  Exhibit B, pgs. 61:22-62:8.**

Q. When you call that answering machine what are you required by law to leave?

MR. HILLER: Objection, Your Honor. He is not testifying about any telephone call that he made. He's testifying about the law and the practices and procedures of Rubin & Rothman.

MR. ARLEO: Your Honor, the mother testified yesterday that she got telephone messages from Barry Mack.  So we need to know what he does when he leaves telephone messages.  *I understand Mr. Hiller doesn't want him to explain anything.*

THE COURT: Wait a minute.  The jury will disregard that.

**2.  Exhibit A, pgs. 65:21-66:2.**

Q. Okay. But once again, it concerned Social Security. You were afraid he was going to take Social Security and you had a Social Security lawyer. *Is that why your lawyer didn't tell the jury that during opening argument?*

THE COURT: She can't answer that.

MR. HILLER: Objection, Your Honor.

MR. ARLEO: Withdrawn.

**3.  Exhibit B, pgs. 121:25-122:2.**

*The important point to stress initially is that Mr. Hiller just told you something about the FDCPA that's simply not true and he knows it.*

**4.  Exhibit B, pgs. 122:6-123:3.**

But she's claiming actual damages. So she's got a duty to do something to mitigate those even if –

MR. HILLER: Objection, Your Honor. We have covered this.

THE COURT: We covered this.

MR. ARLEO: I'm not saying -- no, it's not a legal duty to do anything. It's a human duty.

THE COURT: All right.

MR. ARLEO: It's a prudent duty.

MR. HILLER: I want to note my objection.

MR. ARLEO: *Mr. Hiller, I didn't object when you did this, please. I know you're a big objector, you don't want the jury to hear anything.*

MR. HILLER: Your Honor, I would instruct him to stop addressing me.

THE COURT: Please stop talking to each other.

MR. ARLEO: *That is another example of the fact that this plaintiff and her lawyer don't want you to hear anything to prove what really happened here.* When Mr. Hiller told you that they disclosed the debt on the answering machine he forgot to tell you that under the law they're required to do that, as long as they are not sure that it's not the debtor.

The Court did not make a curative instruction to 1) remind the jury that it

the fact that an attorney objects should not be held against him, or 2) admonish

Mr. Arleo for making disparaging remarks about Plaintiff's counsel.

### 5. Exhibit B, pg. 123:12-17.

And I know the problem with this statute is that sometimes people will use it to leverage on the underlying debt. They figure the debt collector is violating the statute, if we sue them the cost of defense is ridiculous, let's just settle the case because that's what is normally done here. *I'm sure Mr. Hiller -- withdrawn.*

### 6. Exhibit B, pg. 126:22-24.

When these types of plaintiffs come to my office I say goodbye. All right. Because you're not suppose to abuse the statute.

This statement was improper because it was an expression of Mr.

Arleo's personal opinion about the merits of Plaintiff's claim, her

credibility as a person, and his opinion regarding her subjective intent in

bringing this lawsuit.

**7. Exhibit B, pg. 128:7-10.**

> This is the problem with the this statute, okay (sic).  This is why judges
> will look at this statute and say why is your deadbeat client in here?  All
> right. It's a powerful statute that she's pushing it in danger, it's not right.
> The clear implication of this statement was that Plaintiff was a deadbeat.

In addition, the statement improperly suggests that federal court Judges, and

perhaps even the presiding Judge, view debtors such as the Plaintiff as unworthy

litigants who are deadbeats.  The undersigned can state categorically that he has

never encountered a federal Judge who has made such an intemperate remark.

**8. Exhibit B, pg. 129:7-10.**

> Another thing Mr. Hiller didn't tell you that there's a case that came out of
> this Court that said you're allowed to submit evidence of other complaints
> against a debt collector in order to prove your case in this case.

This comment, again, suggest that Plaintiff's counsel was hiding things from the

jury.  In addition, the statement was incorrect.  Defendant was undoubtedly referring to

*Strom v. National Enterprise Systems, Inc.*, 2010 WL 1533383 (W.D.N.Y).  However,

*Strom* involved a discovery dispute in which the only issue was whether the disclosure of

the complaints might reasonably lead to admissible evidence.  The Court specifically

noted that "A determination that certain information is discoverable does not constitute a

ruling on its admissibility. *Id.,* *4.  Thus, defense counsel misrepresented the law in

summarizing the holding of the Court to the jury.

**9.  Exhibit B, pg. 130:5-7.**

Mr. Hiller also said, oh, he says he remembers these phone calls. Well, he forgets to tell you these phone calls occurred in the middle of 2007.

**10.  Exhibit B, pg. 133:11-12.**

He's angry that his name has been dragged through this by someone who wants to troll and sue FDCPA lawsuits.

The undersigned is not exactly sure what it means to "troll" for a lawsuit. I suspect it means to in some way improperly lure or solicit individuals to file an FDCPA lawsuit.  It was undoubtedly a disparaging remark aimed at Plaintiff's counsel suggesting some sort of impropriety.

**11.  Exhibit B, pgs. 133:22-134:3.**

Now, if -- *yesterday I heard conversations from attorneys here. I wonder how many zeros the jury is going to give us.*

MR. HILLER: Objection, Your Honor.

THE COURT: What is that? That's not in evidence.

MR. HILLER: Objection, Your Honor.

MR. ARLEO: Well, withdrawn. Withdrawn.

As demonstrated by the affirmation of Kenneth Hiller submitted in with the first version of this motion, defense counsel "overheard" no such thing.  At the charging conference that took place between this Court's two law clerks, Mr. Arleo, and the undersigned, the jury verdict sheet was discussed.  The undersigned made a joke that perhaps the line in the verdict sheet was not long enough to contain all the zeros the jury might want to insert in the verdict sheet.  Everybody laughed at what was clearly an attempt to inject humor into the proceedings.

Thus, there was no "overhearing" of the statement.  The way it was presented to the jury by defense counsel was as if Mr. Arleo had overheard Plaintiff's counsel whisper to the Plaintiff in the hallway that he was expecting a huge verdict.  Thus, not only was the statement improper because it was not evidence, it was also patently false.

This one statement by defense counsel alone should lead to a mistrial.  It is one thing to suggest that a Plaintiff is greedy.  It is another thing to suggest that he had inside information that established that Plaintiff and his counsel had admitted that they were being greedy.

**12.  Exhibit B, pg. 134:18-21.**

Well, you heard all her testimony at this trial.  None of it makes sense, okay.  ***You know she lied.  I know she lied.  But the problem is she lied to us.  She didn't think we're smart enough to know that.***  Do not let her get away with that.

**B.   Defense Counsel Improperly Vouched for Barry Mack and the Defendant, and Improperly Gave His Personal Opinion of the Evidence.**

It is well established that it is improper for attorneys to place their own credibility in issue or vouch for their clients or witnesses during summations. *See, e.g., Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 326, 340 (2d Cir.1993) (concluding that "recapitulation of [expert's] qualifications" was not improper vouching by counsel, but that counsel's statement that " 'I recommended'" that his client hire the expert was improper vouching, but cured by jury charge); *McAlister v. Schwartz,* 105 A.D.2d 731, 733-34, 481 N.Y.S.2d 167 (2d Dep't 1984) ("Additionally, defense counsel improperly injected his own beliefs into his summation."); *Cusumano v. N.Y. City Transit Auth.,* 75 A.D.2d 801, 801-02, 427 N.Y.S.2d 644 (2d Dep't 1980) (concluding that the defendant's counsel's remarks were "egregiously prejudicial" and "[a]n independent basis for

reversal" when they directly vouched for testimony of subway motorman and referred to " 'plenty more that's not in this case that I can't say' "); *Taormina v. Goodman,* 63 A.D.2d 1018, 1018, 406 N.Y.S.2d 350 (2d Dep't 1978) (noting in dicta that comments by the plaintiff's attorney discussing defendant's expert's reputation in legal community and accusing the defendant and counsel of perjury would have been sufficiently prejudicial to require a new trial). Nevertheless, not every inartful, "improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted." *Matthews v. CTI Container Transport Int'l, Inc.,* 871 F.2d 270, 278 (2d Cir.1989). Moreover, a "district court is entitled to give attorneys wide latitude in formulating their arguments." *Reilly,* 181 F.3d at 271.

Defense counsel, on multiple occasions, gave his personal opinion regarding the character of the Plaintiff and her counsel:

**1. Exhibit B, pg. 123:20-23.**

But sometimes principle comes into play and in this case principle comes into play. ***I'm not here on behalf of Rubin & Rothman if I thought for one second that this was true.  It's simply not true.***

**2. Exhibit B, pg. 124: 1-2.**

But be  clear, I never -- and we never admit that this happened. ***This never happened***, okay.

**3. Exhibit B, pg. 125:6-9.**

And I will tell you, ladies and gentlemen of the jury, if you found any credibility in her testimony here I would be very surprised because she was absolutely incredible.  All right.

**4. Exhibit B, pg. 127:2-9.**

That's why Mr. Hiller tries so hard to draw the distinction between a reputable law firm run by a lawyer who's been in practice for 40 years. Do you think you practice law for 40 years if you're doing any of this? No.  *He's conscientious.  He's afraid.  He knows the law, he just wants to represent his clients, all of their clients.*  They're a collection mill. Well, how did you become a successful law firm?  You do good work, okay. *This firm does excellent work.*

**5.  Exhibit B, pgs. 130:19-131:1**

And the first day I met him I told him after about two minutes of talking to him -- he cried, okay.  He cried just like he cried up here.  And I put my hand on his shoulder and I said, you know something, Barry, here's why we're going to win, because you're telling the truth.  It's the best way to go to a trial, it's the absolute best way.  Why?  Because even though there's a good lawyer up there who's going to try and trip you up and make you look like a liar, truth always wins.

This, and the following citation in the record, in addition to being

improper vouching for the credibility of Mr. Mack, were also improper because

they referenced evidence that was not introduced at trial.

**6.  Exhibit B, pg. 132:6-10.**

But, no, we didn't do that.  Because I asked Barry, I said did you tell her mother that?  No.  I said look, let me tell you something, if you're lying to me I'm going to be your worst enemy.  No.  And *he convinced me that he was telling the truth.*

**7.  Exhibit B, pg. 133:5-8.**

He never requested that.  Never.  Why would he?  And for the reason that he's afraid of being fired?  No.  Only for the reasons that he satisfies the law and he's a good guy.  He's a good guy.

**8.  Exhibit B, pg. 134:18-21.**

Well, you heard all her testimony at this trial.  None of it makes sense, okay.  *You know she lied.  I know she lied.  But the problem is she lied to us.  She didn't think we're smart enough to know that.  Do not let her get away with that.*

**9. Exhibit B, pg. 61:6-8.**

Q. Okay. Now, I'd like for you to explain, Mr. Mack, your understanding of the FDCPA.

A. Okay.

Q. And I know you could probably state the whole statute.

**C.   Defense Counsel Improperly Represented Himself As a FDCPA Expert, and Stated the Presiding Judge Would Corroborate This Fact.**

At one point during his closing statement, defense counsel stated:

I've been doing this for 20 years.  I represent plaintiffs.  I know the FDCPA, as Judge Arcara said, I was a law professor.  I taught it.  I know the statute.

(Exhibit B, pg. 23, pg. 8-10).

Thus, Mr. Arleo represented he was an expert in the FDCPA, and even cited Judge Arcara as someone who could vouch for his expertise.  This could have led the jury to disregard the Judge's instructions and pay heed, instead, to the pronouncements of the FDCPA expert, Mr. Arleo, regarding the proper interpretation of the FDCPA and of the evidence.  Ironically, as demonstrated below, Mr. Arleo's statements regarding a debt collector's obligations under 15 U.S.C.§1692c(b) were incorrect.

**D.   Defendant's Counsel Misrepresented the Law to the Jury.**

In his opening statement, Plaintiff's counsel explained the Plaintiff's claim under 15 U.S.C.§§1692c(b) and 1692b. (Exhibit B, pgs. 109:11-110:5)   The explanation was entirely consistent with the law and the Court's charge to the jury.

In his opening statement, Defendant's counsel stated to the jury:

When Mr. Hiller told you that they disclosed the debt on the answering machine he forgot to tell you that under the law they're required to do that, as long as they are not sure that it's not the debtor.  They don't know who they're calling, they have a phone number.  They're required by law.  And

you know what?  If they don't do that they can get sued for not doing it.
Because the law says you've got to disclose who you are to give the
consumer a right to call back.

(Exhibit B, pgs. 122:25-123:7).

Thus, Defendant's counsel falsely suggested that Plaintiff's counsel had

misrepresented the law.  He further asserted that a debt collector is "required by law" to

disclose on an answering machine that they are collecting a debt.  That, of course, is

untrue.  As has been pointed out in *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d

643 (S.D.N.Y.2006), a debt collector has the obvious alternative of not leaving a

telephone message at all:

> In this case, the fact that NCO may not be able to leave a pre-recorded
> message that complies with both § 1692e(11) and § 1692c(b) of the Act in
> no way warrants a conclusion that "communication" should be narrowly
> interpreted.  Rather, it merely suggests that a debt collector is not
> permitted to leave a pre-recorded message in violation of the FDCPA.
> Debt collectors, however, could continue to use other means to collect,
> including calling and directly speaking with the consumer or sending
> appropriate letters.  Thus, the alleged "Hobson's Choice" in this case is
> self-imposed by NCO.  It is only because of the method of debt collection
> selected-calling and leaving the type of pre-recorded messages-that NCO
> is faced with this potential dilemma. Id. at 659-60.

The clear import of defense counsel's statements were that the disclosures

of the debt by the Defendant were required by law.  This could not help but lead

the jury to incorrectly conclude that it was perfectly legal to disclose the debt on

Plaintiff's mother's telephone answering machine.  This would be especially

likely to mislead the jury in light of Mr. Arleo's alleged Court endorsed expertise

in the FDCPA.

Defendant's counsel also stated to the jury that Plaintiff had a duty to mitigate her

damages. (Exhibit B, pgs. 122:6-7)    When the Court pointed out to Mr. Arleo that this

issue had "been covered", Mr. Arleo continued to argue in the presence of the jury that

"it's not a legal duty to do anything.  It's a human duty. . . It's a prudent duty". Id.  The

Court did not rule on Plaintiff's counsel's objection at the time thereby allowing those

statements to stand unchallenged.  The Court did include a curative instruction the next

day in it's jury charge, but the damage had been done.  These statements were somewhat

unbelievable in light of the fact that approximately 45 minutes prior, the Court had

instructed counsel not to assert that Plaintiff had a duty to mitigate. (Exhibit B, pgs.

100:8-105:15)

   E.   **Defense Counsel Improperly Refered to Facts Not in Evidence, and**
        **Misrepresente the Evidence of Record.**

        It is well established that it is improper for counsel to refer to facts not in evidence

during summations. *See, e.g., Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171,

210-11 (3d Cir.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677

(1993); *TVT Records v. Island Def Jam Music Group,* 257 F.Supp.2d 737, 750

(S.D.N.Y.2003).

        In addition to his statements to the jury regarding his pretrial meetings with Mr.

Mack cited previously, Defense counsel also made an additional statement to the jury that

had no basis in the record:

        And now Mr. Hiller says, well, no one at Rubin & Rothman talked to him
        about it, and they send me there.  Go see if this happened.  You're our
        lawyer.  You're an -- a seasoned FDCPA litigator.  You have sued these
        people.  Is Barry lying?  All right.

        (Exhibit B, pg. 130:14-18).

        Mr. Arleo did not testify during the trial, and no evidence was ever introduced

suggesting that Mr. Arleo "investigated" the merits of Plaintiff's claims.  This was an

intentional attempt by Mr. Arleo to provide what amounts to improper testimony to the

jury in his closing statement.

When Plaintiff's counsel pointed out to the jury that Mr. Arleo's statements

regarding his investigation should not be considered by them and were not evidence, he

objected stating:

> MR. HILLER: Okay. Then Mr. Arleo says, oh, I came down there and
> talked to him about it.  That wasn't -- Mr. Arleo didn't testify about that.
> There was no -- he just made that up'
>
> MR. ARLEO: Objection.  I've got to object to that.  That's ridiculous.  It's
> a federal court.  I'm making something up to a jury. I'm not going to listen
> to this.
>
> THE COURT: It will be up to the jury to remember and
> recall what the evidence is.
>
> (Exhibit B, pgs. 135:24-136:7).

Thus, Mr. Arleo once again made a statement to the jury reaffirming the

truth of his statement that he had investigated Plaintiff's claims on behalf of the

Defendant in the process of making his objection.

### D.  Analysis Under Rule 59 of the Federal Rules of Civil Procedure.

In *Koufakis v. Carvel*, 425 F.2d 892, 900-901 (2d Cir. 1970), the Second

Circuit found as follows:

> The single most important task of a district judge presiding at a trial before
> a jury is to exercise that degree of control required by the facts and
> circumstances of each case to assure the litigants of a fair trial. This
> obligation does not arise only when objections are raised by one of the
> litigants or his counsel. Repeated improprieties by one counsel severely
> prejudice his adversary. Every trial lawyer knows that frequent objection
> is a potentially dangerous course of action the effect of which upon the
> jury cannot be estimated. Thus, the burden falls on the federal district
> judge to use his authority, whenever it becomes necessary, in such a way
> that the proceedings in the courtroom remain devoted to a reasoned and
> reasonable search for justice between the parties." *Id*.  (citations omitted).

Whether to grant a motion for a new trial brought pursuant to Rule 59 is a matter that lies within this Court's sound discretion. *See, e.g., Amato v. City of Saratoga Springs,* 170 F.3d 311, 314 (2d Cir.1999).  Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict." *Caruolo v. John Crane, Inc.,* 226 F.3d 46, 54 (2d Cir.2000) (citations and internal quotation marks omitted) (quoting *Atkins v. City of New York,* 143 F.3d 100, 102 (2d Cir.1998) and *United States v. Landau,* 155 F.3d 93, 104 (2d Cir.1998)).

"In ruling on a motion for a new trial based on attorney misconduct, the trial court must determine whether counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury.... The trial judge has considerable discretion in determining whether a new trial is required." *Strobl v. New York Mercantile Exch.,* 582 F.Supp. 770, 780 (S.D.N.Y.1984) (citations omitted), *aff'd,* 768 F.2d 22 (2d Cir.), *cert. denied sub. nom. Simplot v. Strobl,* 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985); *accord Smith v. Nat'l R.R. Pass. Corp.,* 856 F.2d 467, 470 (2d Cir.1988); *Ullman v. Starbucks Corp.,* 152 F.Supp.2d 322, 329 (S.D.N.Y.2001).  We are mindful that "[g]reat discretion is to be given the judge who was present throughout the trial and is best able to determine the effect of the conduct of counsel on the jury." *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1289 (2d Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990).

The law of this Circuit with respect to motions for new trials under Rule 59 are best expressed in two Court of Appeals cases which came to different conclusions.  In the first case, the offending attorney repeatedly went beyond propriety and decency in characterizing his adversary, continually referred to matters not in the record, and

misrepresented findings in a prior case.  The Court of Appeals found these statements to be sufficient to direct a new trial. *Koufakis v. Carvel*, 425 F.2d 892, 900-905 (2d Cir. 1970).

In the second case, the offending attorney had allegedly improperly suggested that the case had been brought fraudulently, that the plaintiff was litigious, and gave his personal opinion on the merits of the case. *Marcic v. Reinauer Transp. Companies* 397 F.3d 120, 124-128 (2d Cir. 2005).   However, the Court found the claim that counsel had accused plaintiff of being fraudulent or litigious to be unfounded, and found that counsel had not misrepresent evidence, but had merely asked the jury to make inferences regarding the evidence.  While the Court did find that counsel had made improper statements in which he had interjected his opinion regarding the evidence, the Court found the conduct not to be as severe as the conduct in *Koufakis*.  The Court also noted that defendant's counsel had not objected during the summation, and that the statements were contained in a brief segment of a closing statement made after a week long trial. Finally, the Court noted that voluminous evidence supported the jury's verdict. *Id.*

It is submitted that this case is much closer to the facts of *Koufakis*, than the facts of *Marcic*.  While defense counsel did not compare plaintiff's counsel to Goebbels or liken the Plaintiff to the Mafia, he did characterize plaintiff's counsel as intentionally misstating the law and the evidence in the case, as lawyer who "trolls" for lawsuits, and as greedy lawyer who was expecting a verdict with a lot of "zeros" in it.  He, in effect, called Plaintiff a deadbeat, stated that *he knew* she was a liar, and that she was abusing the statute.

Unlike the facts in *Marcic*, counsel's statements were improper on a number of different levels.  Not only did he improperly disparage counsel and the Plaintiff, he improperly vouched for his client, misrepresented the law, and improperly referred to matters not in the record.  In addition, as was the case in *Koufakis*, defense counsel made numerous improper references to himself with respect to his handling of consumer cases for what he considered more worthy plaintiffs, and of course, with respect to his expertise in FDCPA matters. See *Koufakis,* at p. 904.

Also, unlike the facts in *Marcic*, there was not voluminous evidence supporting the jury's verdict.  Indeed, as noted above, Plaintiff contends that the evidence of record mandated a verdict for the Plaintiff with respect to her claim of an improper disclosure of the debt.  At its' core, however, this is a case with very little evidence as such, which pitted the credibility of Angela Clayson and her mother against that of Barry Mack.  The evidence was not overwhelming for either side unlike the *Marcic* case in which there was voluminous evidence supporting the verdict.

Finally, as in the *Koufakis* case, the improprieties were repeated.  Upwards of two dozen improper statements in summation have been identified herein.

Unlike the facts in *Marcic,* Plaintiff's counsel did object on two occasions during Defendant's closing statement. (Exhibit B, pgs. 122, 133).  However, it is submitted that the paucity of objections should be excused in this instance.

As noted previously herein, the *Koufakis* case noted that "Every trial lawyer knows that frequent objection is a potentially dangerous course of action the effect of which upon the jury cannot be estimated.  *Koufakis v. Carvel*, 425 F.2d 892, 900-901 (2d Cir. 1970).  For this reason, the *Koufakis* Court held:  "We are of the opinion that even

It is further submitted that an additional reason exists for excusing the failure of

Plaintiff's counsel to object to every objectionable statement made by Defendant's

counsel.  It has long been an unwritten rule that it is bad form to repeatedly interrupt an

attorney during opening or closing statements.  But beyond that etiquette, the response of

Mr. Arleo to Plaintiff's counsel's first objection put an undeniable chill on the ability of

Plaintiff's counsel to effectively object.  As noted above, the following interchange

occurred early in Mr. Arleo's closing:

> But she's claiming actual damages. So she's got a duty to do something to
> mitigate those even if –
>
> MR. HILLER: Objection, Your Honor. We have covered this.
>
> THE COURT: We covered this.
>
> MR. ARLEO: I'm not saying -- no, it's not a legal duty to do anything. It's
> a human duty.
>
> THE COURT: All right.
>
> MR. ARLEO: It's a prudent duty.
>
> MR. HILLER: I want to note my objection.
>
> MR. ARLEO: ***Mr. Hiller, I didn't object when you did this, please. I
> know you're a big objector, you don't want the jury to hear anything.***
>
> MR. HILLER: Your Honor, I would instruct him to stop addressing me.
>
> THE COURT: Please stop talking to each other.

Thus, in full presence of the jury, Mr. Arleo chided Plaintiff's counsel for what he

considered to be excessive objections and contrasted that to his lack of objections during

Plaintiff's counsel's closing.  The Court did not instruct the jury at that time not to hold it against counsel for making objections, nor did it admonish Mr. Arleo for his rebuke. This left Plaintiff's counsel in an impossible position.  Either object and appear to be an obstructionist as compared to the fair minded Mr. Arleo, or decline to object, and perhaps waive Court review of the improper statements.  It is submitted that this Court should recognize Plaintiff's counsel's predicament in light of Defendant's counsel's statements.

## CONCLUSION

By reason of the foregoing, Plaintiff's motion should be granted in its' entirety.


DATED:      Amherst, New York
            August 6, 2010

s/Kenneth R. Hiller
Kenneth R. Hiller, Esq.
Law Offices of Kenneth Hiller, PLLC
Attorney for Plaintiff
6000 North Bailey Avenue, Ste. 1A
Amherst, NY  14226
(716) 564-3288
Email: khiller@kennethhiller.com