UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA CLAYSON,

                                        Plaintiff,

        v.                                                      1:08-cv-0066-RJA-LGF

RUBIN & ROTHMAN, LLC,

                                        Defendant.
_____

## PLAINTIFF'S REPLY MEMORANDUM OF LAW

## I.  PRELIMINARY STATEMENT.

        On June 23, 2010, Plaintiff moved for multiple forms of relief from the verdict

and judgment entered in this action.  First, Plaintiff moved pursuant to FRCP 50(b)(3) for

a judgment as a matter of law on Plaintiff's claim that the Defendant improperly

disclosed her debt to Plaintiff's mother in violation of 15 U.S.C.§§1692c(b), 1692b(1),

(2) and (3).  Second, in the event that this Court declines to find as a matter of law that

Plaintiff is entitled to a judgment on this claim, Plaintiff requested a new trial pursuant to

FRCP 59(a)(1)(A) based upon the improper statements and conduct of defense counsel

during trial.  Third, Plaintiff requested a new trial on her claim that the Defendant

violated 15 U.S.C.§§1692e(4) and e(5), as well as 1692f by improperly threatening to

seize Plaintiff's exempt Social Security funds.  Again, the basis of this request is the

improper statements and conduct of defense counsel during trial.

        On September 7, 2010, Defendant filed a Memorandum of Law, Affirmation, and

exhibits in response to Plaintiff's motion.  Plaintiff submits this Memorandum of Law in

reply to the response of the Defendant to her motion.

**II.    PLAINTIFF IS ENTILED TO JUDGMENT AS A MATTER OF LAW ON HER CLAIMS THAT THE DEFENDANT IMPROPERLY DISCLOSED HER DEBT TO HER MOTHER.**

There is surprisingly no real dispute as to what the evidence adduced at trial established.  The Defendant agrees that the Ms. Clayson's debt was disclosed to her mother, Lois Fancher, by leaving a message on Ms. Fancher's telephone answering machine. (Def. Memorandum of Law, at p. 5).  It is undisputed that Ms. Fancher heard this disclosure. *Id*.

The Defendant does not deny Plaintiff's assertion that the record establishes that she did not reside with her mother at the time that the improper disclosure was made. Instead, they only deny *knowing* that Ms. Clayson did not reside with her mother at the time the telephone calls were made. *Id.,* at p. 6.  Finally, it is undisputed that the Defendant did not know whether the telephone they called on January 7, 2007 belonged to Plaintiff.  Given the parties agreement to the above facts, the remaining argument becomes whether those facts give rise to an FDCPA violation.

The *Mostiller* case decided by this Court is not directly on point because the offending call in that case was made to the consumers' home telephone. *Mostiller v. Chase Asset Recovery Corp.*, 2010 WL 335023 (W.D.N.Y.).  Here, as noted above, it is agreed that the call was made to the debtors' mother's telephone at a time when Ms. Clayson did not reside with her.

The Defendant argues that their disclosure of the debt on Ms. Fancher's telephone answering machine was an unintentional, inadvertent error.  As pointed out in Plaintiff's Memorandum of Law submitted with this motion, the argument that a disclosure of a debt to third party can be excused if it is unintentional and inadvertent as held in

*Mostiller* contradicts the caselaw of this circuit that holds that the FDCPA is a strict liability statute. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996). However, if one were to apply a bona fide error defense analysis to the facts of *Mostiller*, the contradiction would be removed, and the Congressional intent to protect debt collectors from being sued for unintentional, inadvertent disclosures would be protected. As such, it is submitted that the proper way to analyze this case is by applying the "bona fide error" defense provided for by 15 U.S.C.§1692k(c).

The bona fide error defense shields a debt collector from liability for an FDCPA violation if the violation was unintentional, and if it occurred notwithstanding the debt collectors maintenance of reasonable procedures adapted to prevent such violations. *Id*. If one were to reframe the holdings in *Mostiller* using a bona fide error defense analysis, it appears that the Court would have reached the same result because 1) the debt collector's disclosure on the debtor's home telephone answering machine was not intentional, and 2) the debt collectors policy of disclosing the existence of a debt on the debtor's home telephone answering machine was a reasonable procedure, because it would be reasonable to conclude that such a message would only be heard by the debtor.[1]

In their opposition papers, the Defendant argues that the Plaintiff bears the burden of proving that the Defendant intentionally called a telephone number they knew did not belong to Ms. Clayson. The Defendant cites no caselaw in support of this argument.

The Defendant should bear the burden of proof. The bona fide error defense is an affirmative defense. As such, the Defendant must prove by a preponderance of the

---

[1] Plaintiff does not believe the latter finding is correct, because in modern society, many consumers leave their answering machine in speaker mode so they can hear their messages as they come in, or if they are not in close proximity to the telephone. Given this common practice, there is always a high risk of a disclosure to a third party even when the voice message is left on the debtor's home telephone answering machine. However, this issue need not be addressed by this Court because the message in this case was not left on the Plaintiff's telephone answering machine.

evidence that 1) calling Ms. Fancher and leaving a message on her telephone answering machine was unintentional, and 2) that Rubin & Rothman has reasonable procedures in place to prevent the FDCPA proscription against disclosing a consumer's debt to a third party.

Placing the burden of proof on the Plaintiff as the Defendant suggests would lead to unwanted results.  It would allow a debt collector to call anyone; neighbors, relatives, coworkers, etc. and disclose the debt on their telephone answering machine.  Then, they could simply defend their actions by claiming that they did not know that the number was not the debtor's number.  It would allow for reckless disclosures.  Indeed, it would give debt collectors a perverse incentive not to investigate the accuracy of the telephone numbers they are calling for fear that their investigation would provide an FDCPA plaintiff with ammunition to establish that their disclosures were intentional.  It would be much safer for them to not check the accuracy of the numbers and later claim they did not disclose the debt intentionally when called to task for an improper disclosure.

For the above reasons, it is submitted that this Court should apply a bona fide error analysis in determining whether Rubin & Rothman's disclosure of the Plaintiff's debt to her mother violated the FDCPA.  Applying the first prong of that test, Plaintiff will concede that the evidence adduced at trial did not establish that the disclosure was intentional.

With respect to the second prong, the Defendant did not present any evidence indicating that they took any steps to ensure that they were calling the Plaintiff's home telephone number when they placed the offending call.  Indeed, Mr. Mack testified that

consistent with  Rubin & Rothman's policies, he always disclosed the debt on the telephone answering machines of persons he called. (Exhibit B, pgs. 63:9-24).[2]

Rubin & Rothman's policy of leaving telephone messages disclosing a consumer's debt without first verifying that the telephone they are leaving a message on belongs to the debtor is not a reasonable procedure to prevent violations of the FDCPA. There is no evidence that Rubin & Rothman took any steps to verify that they were calling the Plaintiff's telephone when they placed the offending call.  For the reasons stated above, the Defendant has failed to prove by a preponderance of the evidence that they meet the second prong of the bona fide error defense.  As such, the jury verdict finding the Defendant not liable should be vacated, and a judgment should be entered against Defendant for violating 15 U.S.C.1692c(b) and 1692b(2).

## III.   A NEW TRIAL SHOULD BE ORDERED IN THIS CASE.

### A.  DEFENSE COUNSEL'S CONDUCT IN THIS CASE WAS MUCH WORSE THAN IN *MIRCIC*.

Defendant cites *Marcic v. Reinauer Transp. Companies*, 397 F.3d 120 (2d Cir., 2005) in support of their argument that Mr. Arleo's improper statements at trial do not support the granting of a new trial.  The improprieties in *Marcic* were far less profound than in this case.

In *Marcic*, counsel argued that the Plaintiff was litigious, suggested that the plaintiff and his witnesses had lied, called a witness a liar and suggested that the lawsuit was beneath the dignity of the Court and frivolous. *Id*., at 125-128.  In the instant case, Mr. Arleo did that and much more.  He stated that Plaintiff's counsel was dishonest and

---

[2] All references to exhibits refer to the exhibits annexed to Plaintiff's motion for a new trial found in Docket No. 64.

was hiding things from the jury; he stated that he was an expert in the FDCPA and cited the presiding Judge as a witness to that fact; he stated that he heard Plaintiff's counsel referring to the number of zero's that would be in the verdict to paint him as a greedy lawyer who presumed to know the feelings of the jurors; he vouched for Mr. Mack's credibility based upon his personal meetings with him; he stated in closing that he had personally investigated the claims in this case despite the lack of any evidence in the record to that effect.

In *Marcic*, the statements suggesting plaintiff was greedy, and that he and his witnesses had lied were merely arguments in favor of making certain inferences based upon the evidence of record.  Here, counsel based his assertions upon his personal meetings with Mr. Mack, and discussions with counsel outside the presence of the jury. Unlike *Marcic*, this was a very brief trial, and Counsel's improper statements are littered throughout his closing statement.  This abuse goes far deeper than was present in *Marcic*.

### B. THE FACT THAT THERE WERE ISSUES OF FACT DOES NOT ELIMINATE THE POSSIBILITY THAT DEFENSE COUNSEL'S STATEMENTS PREJUDICED THE JURY.

The Defendant repeatedly argues that Plaintiff did not present any evidence supporting her claims.  However the testimony of Plaintiff and her mother constituted evidence upon which the jury could have based a verdict in Plaintiff's favor.  The sufficiency of this evidence is well established by the fact that this Court denied Defendant's motion for summary judgment as well as their motion for a directed verdict at trial.

In addition, it is unbelievable that the jury did not find that Ms. Fancher's faxing of Plaintiff's medical records to the Defendant established that an improper disclosure of

the debt had been made to her.  It was simply unbelievable that Ms. Fancher would have faxed those records if they had not been solicited by Mr. Mack, especially given the fact that they were faxed one week after their telephone conversation.  The rendering of a verdict in Defendant's favor in the face of this evidence suggests that the jury was improperly influenced by defense counsel's campaign of improper conduct.

### C.  PLAINTIFF'S COUNSEL DID NOT MAKE ANY IMPROPER REMARKS.

Defendant's counsel has attempted to excuse his unbelievably improper remarks at trial on the grounds that they were necessary to combat what he alleges to be improper remarks made by Plaintiff's counsel.  However, none of the remarks cited by counsel were improper in any way.

### 1.  It Was Not Improper To Refer To The Defendant As A Debt Collector.

A debt collector is defined under the FDCPA as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C.§1692a(6).  Collection attorneys have been held to fall within definition, and the Defendant has never disputed that they are debt collectors under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).   As such, there was nothing improper about referring to the Defendant as a debt collector.  Further, Plaintiff's counsel's remarks about the manner in which the Defendant collects debts was well supported in the record by the testimony of Mr. Mack that he made over 25,000 collection telephone calls per year.(Plaintiff's Exhibit B, p. 9).

### 2.   It Was Proper To Question Testimony Given In Response To A Leading Question.

Defendant's counsel complains that it was improper to point out to the jury that Mr. Mack's testimony was elicited through the use of very leading questions posed to him by Mr. Arleo.  Counsel is correct that there was nothing legally improper about using leading questions given the fact that he was cross-examining Mr. Mack, and Plaintiff's counsel never stated that the questions were legally impermissible.

However, the fact that the use of leading questions was permissible under the circumstances does not mean that Plaintiff's counsel cannot point out to the jury that an answer to a leading question by a witness's own counsel should be subjected to closer scrutiny because the question contains the very answer that the attorney wants to obtain. Answers to such questions are less credible or probative than responses to questions that do not presuppose an answer in them, and Plaintiff's counsel was well within his rights to make this argument to the jury.

### 3.   It Was Not Improper For Plaintiff's Counsel To Elicit Testimony From Plaintiff About Her Disability, Or To Discuss It With The Jury.

The Plaintiff never improperly sought to obtain sympathy from the jury with respect to Plaintiff's disability.  In fact, in his opening statement, Plaintiff's counsel specifically stated,

> Now, one thing I want to make really clear, that is not Rubin and Rothman's fault.  And we are not trying to hold Rubin & Rothman responsible for that accident.  But you need to know this because this is who Angela Clayson is.  It's her history, it's her background.

> Plaintiff's Exhibit A (Docket No. 64-2), p. 14)

An understanding of Ms. Clayson's disability was relevant to a number of issues that were present in this case.  For example, the jury needed to know why she did not

make her car payments, why she allowed her car to get repossessed, why she was unable to pay the debt, why she was unable to work to pay the debt, why she was receiving Social Security Disability, and simply to understand the Plaintiff as a person and her circumstances.  No objection to discussing these matters was ever made at trial, and Plaintiff's counsel is confident that if they had been made, they would have been overruled.

### 4.   Plaintiff's Counsel's Referenced to Insurance and Warranty Law Were Not Improper.

The FDCPA is a strict liability statute. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).  In an effort to explain the concept of strict liability to the jury, Plaintiff's counsel made reference to no fault insurance and warranty law.  There were no objections made to these references, and they were not improper.

### 5.   Plaintiff's Counsel Did Not Improperly Vouch For Plaintiff Or Her Mother, Nor Did He Improperly Comment On The Evidence.

All statements made by the undersigned counsel relative to the credibility of Ms. Clayson, Ms. Fancher, and Mr. Mack were based upon testimony adduced at trial.  Any statement that might be construed as vouching for a witness, or as an expression of his personal opinion of the evidence were, in fact, arguments by counsel regarding what inferences the jury should make from the evidence of record.  This is permissible. *Marcic v. Reinauer Transp. Companies* 397 F.3d 120, 126 (2d Cir. 2005).

### 6.   Plaintiff's Counsel Did Not Improperly Attack Defendant's Counsel.

When asked whether he met with Mr. Arleo as part of the Defendant's "investigation" into Plaintiff's allegations, Mr. Mack could only reply, "I believe so." (Exhibit B, p. 18, 32).  However, he could not recall the details of any conversations with

Mr. Arleo, or really even confirm that such a meeting had taken place. *Id.*  Further, there was no evidence submitted indicating that the Defendant requested that Mr. Arleo conduct any sort of investigation.

Nonetheless, in his closing argument, Mr. Arleo stated that at the request of the Defendant, he had met with Mr. Mack to investigate the claims of the Plaintiff.  He also gave details of his conversations with Mr. Mack during his investigation.

Given the lack of any evidentiary foundation in the record for Mr. Arleo's statement regarding his investigation into Plaintiff's claims, it was clearly improper for him to detail his alleged investigation in his closing statement.  It was likewise permissible for Plaintiff's counsel to criticized Defendant's counsel for citing evidence outside the record in closing.

### 7.  Plaintiff's Counsel's Comments About the Defendant's Policy of Not Tape Recording Telephone Calls Was Proper.

Defense counsel suggests that Plaintiff's counsel improperly made reference to the fact that the presiding Judge had ordered him not to discuss Defendant's policy of not tape recording their collection telephone calls.  However, the Judge never made such a ruling.

Judge Arcara ordered the jury to disregard the following question posed by Plaintiff's counsel:

Okay. If they had tape-recorded the conversations we wouldn't be here today, would we?

Exhibit B, p. 28, 12-13.  In response thereto Judge Arcara stated "What kind of question is that?  Is that a question?" Judge Arcara then directed the jury to disregard the statement. (Ex. B, p. 28, 12-18).

The direction by Judge Arcara was did not in any way suggest that counsel's line of questioning regarding the Defendant's tape recording policies were improper.  Indeed, questions were posed to Mr. Mack without objection relevant to that policy for two pages prior to Judge Arcara's direction. (Exhibit B, p.27-28).

Rather, the direction by the Court was merely an effort to strike the comment by counsel that if the Defendant had tape recorded the telephone call, "we wouldn't be here". Obviously, such a question called for speculation, and was not within the knowledge of the witness.  However, the subject of the Defendant's policies regarding tape recording was never objected to by opposing counsel, nor commented upon by the Court.  As such, it was perfectly appropriate for Plaintiff's counsel to comment on those policies in closing.

**D.  DEFENDANT'S COUNSEL'S IMPROPER STATEMENTS WERE NOT IN RESPONSE TO ANY SUPPOSED IMPROPER STATEMENTS MADE BY PLAINTIFF'S COUNSEL.**

Even if one were to accept Defendant's arguments that Plaintiff made improper statements at trial, which is vehemently denied, they did not excuse the outrageous statements made by Defendant's counsel.

Nothing stated by Plaintiff's counsel necessitated Defendant's counsel improperly stating that he heard Plaintiff's counsel discussing zeros.  Nothing Plaintiff's counsel said necessitated Defendant's counsel from ignoring the finding of this Court that he should not argue mitigation to the jury.  Nothing stated by Plaintiff's counsel forced Mr. Arleo to improperly chide the undersigned for raising objections, and to state in the presence of the jury that the undersigned was attempting to keep evidence from the jury and was intentionally misrepresenting the law to them.  Nothing stated by Plaintiff's counsel necessitated Defendant's counsel to tout his expertise in the FDCPA and stating that the presiding Judge could vouch for his expertise.  Nothing stated by Plaintiff's counsel

required Defendant's counsel to make any of the outrageous, improper statements to the jury that he made.

It is true that Plaintiff's counsel pointed out in the record inconsistencies in Mr. Mack's testimony and suggested that this evidence cast doubt on his credibility. However, an appropriate response to that argument would be for Mr. Arleo to point to other evidence, or argue that Plaintiff's counsel's interpretation of the evidence was not supportable. The appropriate response is not to relate the details of private meetings held with Mr. Mack and state that in his personal opinion, Mr. Mack was credible.

In short, the Defendant's claim that their counsel's statements were justified by statements made by Plaintiff's counsel is unfounded.

### E.   IT IS UNFAIR TO REQUIRE PLAINTIFF'S COUNSEL TO ADDRESS DEFENDANT'S IMPROPER STATEMENTS IN REBUTTAL.

Defendant argues that to the extent Defense counsel may have made improper statements to the jury, that Plaintiff's counsel was obliged to either object contemporaneously to them, or to address them in rebuttal. Plaintiff has already addressed why he did not object in her main brief.

It would be unfair to require Plaintiff's counsel to discuss the improper statements made by Defendant's counsel in his reply argument. First, by doing so, counsel is forced to highlight statements that should have never been made. For example, would the undersigned counsel really want to discuss the allegations that he was looking for a verdict with a lot of zero's in it in reply? The Defendant should not be permitted to force Plaintiff to frame her argument and dilute her presentation to the jury by responding to the outrageously improper statements of Defendant's counsel. To require this would encourage counsel to make such statements knowing that opposing counsel will have to

spend valuable time responding to them. The more prudent course, and the course this Court should take, is to undo the damage that has been done by vacating the jury verdict entered in this case.

### F. PLAINTIFF'S MOTION WAS TIMELY.

Rule 50 of the Federal Rules of Civil Procedure details the rules for filing motions for new trial. If the basis of the motion is to dismiss based upon a lack of evidence, or for a directed verdict, the motion must be made prior to the submission of the matter to the jury. If the Court denies the motion, a written motion must be filed within 28 days of the entry of judgment. Rules 50(a)-(b) of Federal Rules of Civil Procedure. Both parties made oral motions prior to the submission of the case to the jury. (Exhibit C, pgs. 3:12-6:4). Plaintiff then timely moved for judgment as a matter of law.

Plaintiff's motion for a new trial based upon the improper statements and conduct of opposing counsel is not a motion for judgment as a matter of law. There is no requirement under the rules that a motion be made for a mistrial prior to the submission of the case to the jury. Rule 50(d) of Federal Rules of Civil Procedure.

Defendant cites three cases in support of their contention that a motion for a mistrial must be brought before submission of the case to the jury. *Gibbs v. Donnelly*, 673 F.Supp.2d 121 (W.D.N.Y.,2009); *Cuevas v. Henderson*, 801 F.2d 586 (2d Cir.1986); *United States v. Aulet*, 618 F.2d 182 (2d Cir.1980). However, all three of these cases requests to vacate criminal convictions based upon a claim of ineffective assistance of counsel. As such, the Federal Rules of Civil Procedure were inapplicable.

Congress required motions for judgment as a matter of law to be made before submission of a case to the jury. By specifically omitting such a requirement for motions

for a new trial, Congress clearly indicated its' decision not to impose such a requirement for such motions.  Accordingly, Plaintiff's Motion for a New Trial is timely.

## CONCLUSION

In his closing statement, defense counsel made a barrage of improper statement that clearly prejudiced the outcome of the trial.  Plaintiff's counsel objected to many of these statements, but was reluctant to object as furiously as he could have given opposing counsel's repeated statements that Plaintiff and her counsel were trying to hide things from the jury.  Under these circumstances, this circuit has recognized the failure to object should not constitute a reason for not granting a motion for a mistrial. *Koufakis v. Carvel*, 425 F.2d 892, 900-901 (2d Cir. 1970).

With respect to her motion for a judgment as a matter of law, the undisputed evidence established that the Defendant violated the FDCPA by disclosing the Plaintiff's debt to her mother.

Accordingly, it is submitted that this Court should grant the relief requested in this motion.



DATED:        Amherst, New York
              October 4, 2010

                                         s/Kenneth R. Hiller_____
                                         Kenneth R. Hiller, Esq.
                                         Law Offices of Kenneth Hiller, PLLC
                                         Attorney for Plaintiff
                                         6000 North Bailey Avenue, Ste. 1A
                                         Amherst, NY  14226
                                         (716) 564-3288
                                         Email: khiller@kennethhiller.com