UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANGELA CLAYSON,

        Plaintiff,

                  **DECISION AND ORDER**
   v.                   08-CV-66A

RUBIN & ROTHMAN, LLC,

        Defendant.

## I. INTRODUCTION

Pending before the Court is one post-trial motion each by plaintiff Angela Clayson and defendant Rubin & Rothman, LLC.

In plaintiff's motion (Dkt. No. 51), plaintiff seeks vacation of the final judgment entered on June 9, 2010 (Dkt. No. 50) following a defense verdict on May 28, 2010. With respect to her claims under Sections 1692b(2) and 1692c(b) of the Fair Debt Collection Practices Act ("FDCPA"),[1] plaintiff seeks judgment as a matter of law under Rule 50(b)(3) of the Federal Rules of Civil Procedure ("FRCP") or, in the alternative, a new trial under FRCP 59(a)(1)(A). With respect to her claims under 15 U.S.C. §§ 1692e(4), 1692e(5), and 1692f, plaintiff seeks a new trial without requesting judgment as a matter of law.

---

[1] 15 U.S.C. §§ 1692b(2) and 1692c(b), respectively.

Plaintiff seeks this relief on the grounds that defendant admitted at trial to communications that establish strict liability, and that the jury ignored this admission and other evidence favorable to her because of unfairly prejudicial comments that defense counsel made in front of the jury.

Meanwhile, defendant has made a motion (Dkt. No. 67) seeking costs and fees for what it considers abusive litigation maintained in bad faith. Defendant bases its request for costs and fees on three sources of legal authority: 15 U.S.C. § 1692k(a)(3); 28 U.S.C. § 1927; and the Court's "inherent power" to manage its cases, which includes the power to levy sanctions in response to improper attorney conduct. In short, defendant seeks costs and fees on the grounds that plaintiff's counsel failed to conduct a proper investigation of plaintiff's claims. According to defendant, an investigation at the beginning of the case would have exposed plaintiff's claims as false and would have spared its employee and principal trial witness, Barry Mack, extreme emotional distress and embarrassment.

The Court held oral argument for both motions on October 18, 2010. For the reasons below, the Court will grant plaintiff's motion in part and direct judgment as a matter of law with respect to her claims under 15 U.S.C. §§ 1692b(2) and 1692c(b). The Court will deny plaintiff's motion in all other respects. Further, the Court will deny defendant's motion in its entirety.

## II. BACKGROUND

This case concerns plaintiff's allegations that defendant violated the FDCPA when it tried to collect a debt from her. The circumstances underlying the debt are not in dispute. After an electrocution injury in 2004 that left her unable to work, plaintiff fell behind in car payments that she owed to Ford Motor Credit Company ("FMCC"). FMCC eventually repossessed plaintiff's car and sold it at auction, but then asserted that plaintiff owed the difference between the auction sale price and the contractual value of the car to which plaintiff had agreed when she acquired it. This difference became the debt in question, an amount of approximately $4,000–4,500. After a period of time when plaintiff did not pay the debt, FMCC referred the debt to defendant for collection.

How defendant allegedly acted after the referral of the debt became the factual basis for this case. Defendant's employee, Mr. Mack, testified at trial that defendant's efforts to collect the debt included two messages that he left on the answering machine of plaintiff's mother, Lois Fancher. Mr. Mack left these messages for Ms. Fancher after he dialed a telephone number registered to Ms. Fancher at Ms. Fancher's residence. Mr. Mack left the first telephone message in January 2007, several months before plaintiff moved in with her mother from late May through July 5, 2007. Mr. Mack left the second telephone message at an unspecified later time in 2007. In these messages, Mr. Mack disclosed to Ms. Fancher that he was attempting to reach plaintiff in connection with a debt

3

that she owed. In response to communications from Mr. Mack, Ms. Fancher sent Mr. Mack by fax several pages of plaintiff's medical records, to confirm plaintiff's recent surgeries and inability to pay the debt. At trial and at oral argument for the pending motions, defendant never asserted that plaintiff ever provided either FMCC or it with her mother's telephone number. At no time has defendant explained how it acquired Ms. Fancher's telephone number or how plaintiff might have authorized communication with her mother. In contrast, Mr. Mack testified at trial that defendant's telephone message system is designed in such a way that it can wind up leaving messages for non-debtor third parties disclosing that it is attempting to collect a debt against a specified debtor.

Plaintiff placed a second set of factual allegations in controversy as part of her claims. During the course of his communications with plaintiff, Mr. Mack allegedly made threats to the effect that defendant would access plaintiff's bank accounts as needed to satisfy the debt in question, even if the only funds in those bank accounts were Social Security Disability benefits.[2] Plaintiff has alleged that this threat caused her great distress and caused her to consider depositing her Social Security Disability benefits in the bank accounts of

---

[2] Plaintiff's allegation was significant in part because Social Security Disability benefits are exempt from debt collection efforts. See 42 U.S.C. § 407(a) ("[None] of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.").

4

relatives to shield her from defendant's threatened actions.  At trial, the parties sharply contested whether any sort of threat about Social Security Disability benefits occurred at all and how seriously plaintiff should have taken such a threat if it occurred.

Plaintiff commenced this case by filing her complaint on January 24, 2008. In her complaint, plaintiff accused defendant of violating the FDCPA by communicating with her mother, Ms. Fancher, without permission and by threatening to drain all of her bank accounts even if the only funds in those accounts were Social Security Disability benefits.  As the case unfolded, plaintiff never made a motion for summary judgment, but defendant did make a motion for summary judgment that the Court denied.  The Court presided over the trial on May 25–28, 2010 and orally denied FRCP 50 motions from each side.  As indicated on the jury verdict form (Dkt. No. 49), the Court consolidated the alleged statutory violations in the complaint into two questions: 1) whether defendant communicated with plaintiff's mother in a way that violated Sections 1692b and 1692c of the FDCPA; and 2) whether defendant made a threat to plaintiff that violated Sections 1692e and 1692f of the FDCPA.  The jury returned its verdict on May 28, 2010 and found for defendant on both questions.

Although the parties have not quite stated their positions this succinctly, both pending motions hinge on whether the jury's verdict can stand as a matter of law.  Defendant argues that the jury verdict should stand because it reflected

5

a reasoned decision that defendant, through Mr. Mack, was the more credible party.  Defendant argues further that sanctions in the form of costs and fees are appropriate because the trial exposed testimony from plaintiff and her mother that was so conflicted or otherwise incredible that plaintiff's counsel never should have prosecuted this case.  According to defendant, plaintiff's counsel's decision to press forward anyway could reflect only a bad-faith effort to smear the firm and to cause Mr. Mack great emotional distress.  Plaintiff contends that defendant explicitly admitted to leaving unauthorized messages on her mother's answering machine, thereby requiring a verdict in her favor as to that claim because the FDCPA is a strict-liability statute.  Plaintiff contends further that the jury ignored this evidence and evidence of a threat to her bank accounts only because of numerous prejudicial statements that defense counsel made in front of the jurors.[3]  Plaintiff concludes that these circumstances, at the very least, warrant a new trial free of undue prejudice on all of her allegations of FDCPA violations.

---

[3] The Court will comment briefly on this allegation later in this Decision and Order.  For the sake of brevity, the Court here will note that plaintiff's memorandum of law summarizes all of the statements in question.  (*See* Dkt. No. 64 at 7–23.)

## III. DISCUSSION

### A. *Plaintiff's Renewed Rule 50 Motion*

When timely filed, as occurred here, a moving party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." FRCP 50(b). "In ruling on a motion for judgment as a matter of law, trial courts are required to consider the evidence in the light most favorable to the nonmovant and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. *See Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir.2001). The Court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir.1988) (internal quotation marks omitted); *see also Kim v. Hurston*, 182 F.3d 113, 117 (2d Cir.1999); *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir.1993). In making its evaluation, the Court should 'review all of the evidence in the record,' *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000), but it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the Court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested

witnesses." *Obabueki v. Choicepoint, Inc.*, 236 F. Supp. 2d 278, 282 (S.D.N.Y. 2002). The Court will assess plaintiff's arguments under this legal standard, while also bearing in mind that "[t]o recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The Act is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) ("The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute."); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) ("The FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional.") (internal quotation marks and citation omitted).

    1. *Claim Under Sections 1692b and 1692c*

"Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . not state that such consumer owes any debt . . . ." 15 U.S.C. § 1692b(2). "Except as provided in section 1692b . . ., without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person

8

other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). Here, Mr. Mack's trial testimony indicated that he called plaintiff's mother twice in 2007 and left messages each time. The first call occurred in January 2007, several months before plaintiff began living with her mother in late May 2007. The second call occurred at an unspecified time after May 2007. Mr. Mack testified that he left these messages at a telephone number that he thought belonged to plaintiff, even though there is no factual dispute that 1) plaintiff was not living with her mother at the time of at least the first call; 2) defendant did not acquire this telephone number from plaintiff; 3) plaintiff never used her mother's telephone number when communicating with the original debtor; 4) a public-record search for that telephone number and its associated residence would not uncover plaintiff's name; and 5) plaintiff never authorized defendant to discuss her debt with her mother. Additionally, defendant conceded at trial that anyone who overheard the messages that it left on plaintiff's mother's answering machine "would know that Angela Clayson owed a debt that was being collected by Rubin & Rothman and Barry Mack was the person to call to talk about that debt." (*See* Dkt. No. 59 at 78.) Plaintiff's mother's decision to give defendant some of plaintiff's medical records underscores that she was communicating with defendant about plaintiff's debt without plaintiff's knowledge or authorization. No evidence at all

9

emerged at trial that plaintiff authorized her mother to submit any of her medical records to a debt collector.  At oral argument for the pending motions, defendant offered no credible explanation for why plaintiff's mother would even think, of all things, to give a debt collector whom she did not know some of her daughter's medical records.  Absent some kind of conversation with that debt collector that raised the issue of plaintiff's health as it pertained to plaintiff's ability to pay the debt in question, plaintiff's mother's submission of medical records to defendant would be nonsensical.

Under these circumstances, and in spite of any inferences owed to defendant as the nonmoving party, a reasonable juror would have been constrained to accept that defendant communicated with plaintiff's mother twice about plaintiff's debt without plaintiff's authorization.  Since the FDCPA is a strict-liability statute, the undisputed evidence of defendant's communications suffices to establish, as a matter of law, that those communications violated Sections 1692b(2) and 1692c(b).  The Court finds that the jury would have ignored a straightforward, strict-liability statutory violation if and only if it had been affected by defense counsel's unprofessional portrayal of plaintiff as a "deadbeat" who "wants to troll" for "zeroes" in a huge verdict.  (*See* Dkt. No. 59 at 128 ("This is the problem with the this statute, okay.  This is why judges will look at this statute and say why is your deadbeat client in here?"); *id.* at 133 ("[Mr. Mack is] angry that his name has been dragged through this by someone who wants to troll and

10

sue FDCPA lawsuits."); *id.* ("I heard conversations from attorneys here. I wonder how many zeroes the jury is going to give us.").) The Court thus will vacate the portion of the verdict pertaining to these sections of the FDCPA and accordingly will direct the Clerk of the Court to enter judgment in favor of plaintiff.

Although the parties have argued extensively about this Court's holding in *Mostiller v. Chase Asset Recovery Corp.*, No. 09-CV-218, 2010 WL 335023 (W.D.N.Y. Jan. 22, 2010) (Arcara, *J.*), that case has no bearing on this one and does not require a different conclusion. In *Mostiller*, the Court rejected a claim of actual damages related to the overhearing of the defendant's message because the defendant left its message on an answering machine used exclusively by the plaintiff, connected to the plaintiff's telephone number, at the plaintiff's address. Even the most diligent of public-record searches would not have given the debt collector in *Mostiller* any reason to suspect that the plaintiff had a fiancée living with her who would have overheard that plaintiff playing her messages for herself. The scenario in *Mostiller* was the inverse of the scenario in the present case, in which even the most diligent of public-record searches would not have linked plaintiff's name to the telephone number in question.

2. *Claim Under Sections 1692e and 1692f*

Plaintiff's claims under Sections 1692e and 1692f are a different matter, however, because they are much more factually sensitive. Under Sections 1692e and 1692f, debt collectors are generally prohibited from engaging in false,

11

deceptive, misleading, unfair, or unconscionable conduct.  In her complaint, plaintiff invoked these sections with respect to her allegations about the threats to her Social Security Disability benefits.  Throughout this case, defendant completely denied making any threats about Social Security Disability benefits.  At trial, the parties presented the jury with conflicting evidence about the events and circumstances surrounding plaintiff's allegations.  Even without the unprofessional comments and personal vouching from defense counsel that plaintiff has noted in her motion papers, a reasonable jury could have given more weight to defendant's evidence than plaintiff's evidence, and this Court sees no reason to upset the verdict that followed.  The Court thus will deny the rest of plaintiff's motion.

### B. *Defendant's Motion for Attorney Fees*

#### 1. *15 U.S.C. § 1692k(a)(3)*

"On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  15 U.S.C. § 1692k(a)(3).  "For [defendant] to prevail, it would have to establish that [plaintiff's] 'action' was brought in bad faith and for harassing purposes.  An 'action' in its usual legal sense means a lawsuit brought in a court.  Thus, [defendant] must show that [plaintiff's] entire lawsuit . . . was brought in bad faith and to harass [defendant]."  *Horkey v. J.V.D.B. & Assocs., Inc.*, 333

12

F.3d 769, 775 (7th Cir. 2003) (internal quotation marks and citations omitted). Here, although defendant apparently considers plaintiff's entire lawsuit to be in bad faith, it never made a motion to dismiss under FRCP 12 that would have disposed of this allegedly harassing litigation in its entirety. Defendant made a motion for summary judgment earlier in this case, and although that motion focused on damages and offers of judgment, the Court denied it without objections from defendant.[4] At trial, Mr. Mack admitted under questioning from his own attorney that he engaged in all of the communications necessary to establish a strict-liability violation of the FDCPA. In this context, plaintiff, if anything, should be faulted for failing to reduce the scope of the trial by moving for partial summary judgment as to liability with respect to her claims under Sections 1692b(2) and 1692c(b). In the face of a partial directed verdict that plaintiff won after surviving summary judgment and then eliciting the necessary evidence at trial, the Court will not find that any part of plaintiff's case, let alone the entire case, was brought in bad faith to harass defendant. The Court accordingly rejects defendant's argument under 15 U.S.C. § 1692k(a)(3).

---

[4] The Court adopted a Report and Recommendation from Magistrate Judge Leslie G. Foschio without defendant having filed any objections under FRCP 72.

### 2. *28 U.S.C. § 1927 and Inherent Authority*

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics. The purpose of this statute is to deter unnecessary delays in litigation. Bad faith is the touchstone of an award under this statute. We have held that an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal quotation marks and citations omitted). Of all the proceedings recorded in the docket, the Court does not find any that occurred solely to drag out the litigation between the parties. Plaintiff had a straightforward claim of improper communications that defendant confirmed at trial. Plaintiff had a colorable claim regarding threats to her Social Security Disability benefits that she reasonably took to a jury for factual resolution. As the Court noted above, the problem in this case was not a multiplication of proceedings but rather an absence of

14

proceedings—namely, the absence of a summary judgment motion by plaintiff that would have shortened the eventual trial. Under these circumstances, the Court finds no hint of bad faith or dilatory conduct that would justify an award under Section 1927. Without any evidence of bad faith, the Court will not consider defendant's argument concerning its inherent authority to impose sanctions. See *Teamsters*, 948 F.2d at 1345 ("As we made clear in *Oliveri*, this Court, in recognizing the need for restraint, has always required a particularized showing of bad faith to justify the use of the court's inherent power . . . ."). The Court thus denies the balance of defendant's motion.

## IV. CONCLUSION

For all of the foregoing reasons, the Court hereby grants plaintiff's motion (Dkt. No. 51) in part with respect to plaintiff's claims under Sections 1692b(2) and 1692c(b) of the FDCPA. The Court accordingly vacates the judgment (Dkt. No. 50) and directs the Clerk of the Court to file a new judgment reflecting that plaintiff has established a violation of the above sections of the FDCPA as a matter of law.

The Court denies plaintiff's motion in all other respects.

The Court denies defendant's motion (Dkt. No. 67) in its entirety.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: November 16, 2010